**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

    v.

DAWUD RIGGINS,

   Defendant.

**Criminal No. 20-10 (CKK)**

**MEMORANDUM OPINION**
(April 27, 2020)

Pending before the Court is Defendant Dawud Riggins's Emergency Motion for Release Due to the COVID-19 Pandemic, ECF No. 12 ("Def.'s Mot."). In light of statutory factors and the COVID-19 pandemic, including Mr. Riggins's asthma, he asks the Court to release him to home confinement under the High Intensity Supervision Program ("HISP"). The Government opposes his request. *See* Gov't's Opp'n to Def.'s Emergency Mot. for Release Due to the COVID-19 Pandemic ("Gov't Opp'n"), ECF No. 14. Upon consideration of the briefing, Mr. Riggins's medical records, and the entire record, and taking into consideration all the factors specified in 18 U.S.C. § 3142(g), the Court will DENY Mr. Riggins's Motion.[1] This determination is without prejudice to reconsideration as events and circumstances change.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Indictment charges Mr. Riggins with one count of Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1).[2] On January 1, 2020 at approximately 12:20 AM, four

---

[1] In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCrR 47(f).

[2] The information in the Background section of this Memorandum Opinion and Order is taken

officers in the Metropolitan Police Department's Gun Recovery Unit were on patrol and, after hearing gunshots in the area, pulled onto the 1500 block of V Street, S.E. They saw an individual, who was later identified as Mr. Riggins, standing in front of an apartment complex at 1522 V Street, S.E.

The officers exited the vehicle and saw Mr. Riggins grab his waistband. Mr. Riggins then turned to enter the building. As he was attempting to close the doors, one of the officers yelled "Stop!" Another officer pushed through the doors before Mr. Riggins could close them and saw Mr. Riggins running up the stairs. That officer stopped Mr. Riggins at the top of the stairs. Mr. Riggins positioned himself to lay face-down on the ground. He reached into his waistband with his right arm and pulled out a pistol. He did not drop the firearm when commanded by the officer to do so.

The officer recovered the gun from Mr. Riggins, who was then placed in handcuffs. The firearm was ultimately identified as a Springfield XD40 .40 caliber firearm; it was loaded with ten rounds of ammunition in an eleven-round capacity magazine. The officers believed Mr. Riggins to be under the influence of phencyclidine, or PCP, at the time of his arrest. A later report from the Pretrial Services Agency indicated that Mr. Riggins did test positive for PCP at the time of his arrest.

The grand jury returned the Indictment on January 8, 2020. Indictment, ECF No. 1. Magistrate Judge Deborah A. Robinson denied Mr. Riggins's motion for release and granted the Government's motion to detain Mr. Riggins pending trial on January 14, 2020. Jan. 14, 2020 Min. Order. Mr. Riggins filed the instant motion on April 13, 2020. Def.'s Mot., ECF No. 12.

---

from the Indictment and the information provided by the parties in their pleadings. As Mr. Riggins's Motion and Supplement did not include much case-specific background, much of this background is drawn from the Government's Opposition.

## II. STANDARD OF REVIEW

A. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984, if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C.§§ 3142(e)(1), (f)(2)(g). Even if defendant does not pose a flight risk, danger to the community alone is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 754–55 (1987); *United States v. Simpkins*, 826 F.2d 94, 98 (D.C. Cir. 1987).

The Bail Reform Act requires courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person in the community."  18 U.S.C. § 3142(b).  When personal recognizance or an unsecured appearance bond is insufficient, courts may consider imposing an alternative condition, or combination of conditions, that will assure the defendant's appearance in court and the safety of the community.  *See* 18 U.S.C. § 3142(c); *see also* 18 U.S.C. § 3142(c)(1)(B) (when imposing an alternative condition or combination of conditions, the court must select the "least restrictive" condition(s)).  Defendants who are charged with certain specified offenses are subject to a rebuttable presumption that no condition or combination of conditions can assure the defendant's appearance or ensure the safety of the community, 18 U.S.C. § 3142(e). The rebuttable presumption does not apply in the instant case, where Mr. Riggins was detained based upon the Government's motion pursuant to 18 U.S.C. § 3142(f)(1).  *See* Jan. 10, 2020 Minute Order; Jan. 14, 2020 Minute Order.

"Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010); s*ee United States v. Nickelson*, 2018 WL 4964506, at *3 (D.D.C. Oct. 15, 2018) (citing *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003)).   To determine whether the government has carried its burden, the Court must consider the same statutory factors weighed by the magistrate judge in this case, including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community, and the risk of flight, which would be posed by defendant's release. 18 U.S.C. § 3142(g).

Finally, although the D.C. Circuit has not yet addressed the issue, courts in this district and in many circuits have indicated that the district judge reviews *de novo* a detention decision rendered by a magistrate judge.  *See, e.g.*, *United States v. Hassanshahi*, 989 F. Supp. 3d 110, 113 (D.D.C. 2013); *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990) (collecting cases); *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Gonzales*, 149 F.3d 1192 at *1 (10th Cir. 1998); *United States v. Hazime*, 762 F.2d 34, 36 (6th Cir. 1985.  The Court will follow that procedure in this case.

B. Fifth Amendment Due Process Clause and Eighth Amendment

 In *Brogsdale v. Barry*, 926 F.2d 1184 (D.C. Cir. 1991), the Court of Appeals for the District of Columbia Circuit recognized that the due process clause of the Fifth Amendment bears upon the conditions of pretrial confinement.  In that case, the D.C. Circuit overturned the district court's decision granting summary judgment to prisoners who sought damages under 42 U.S.C.

§ 1983, on the grounds that a riot and fire at the jail were the foreseeable consequences of unconstitutional overcrowding.  While the D.C. Circuit noted there were recent renovations at the jail and expressed doubts about the strength of plaintiffs' claims, it ultimately declined to reach the constitutional violation question, finding instead that the municipal officials who had been sued were protected by the doctrine of qualified immunity even if the conditions could be found to violate plaintiffs' constitutional rights.  *Id*. at 1191–92.  In its opinion, however, the D.C. Circuit recognized that the Fifth Amendment applies to pretrial detainees when it noted that "prison overcrowding may violate the Constitution where it is so egregious that it endangers the safety of inmates."  *Id.* at 1188 (citing *Morgan v. District of Columbia*, 824 F.2d 1049, 1056–58 (D.C. Cir. 1987)).  The D.C. Circuit indicated further that the threshold for establishing a constitutional violation is "clearly lower" for pretrial detainees than for convicted prisoners.  For the group not yet convicted, "the question is whether prison conditions 'amount to punishment of the detainee.'  A condition may amount to punishment if it 'is not reasonably related to a legitimate [institutional] goal—if it is arbitrary or purposeless.'"  *Id.* at 1188 n.4 (citation omitted) (quoting *Bell v. Wolfish,* 441 U.S. 520, 535, 539 (1979)).

A court in another district recently briefly addressed whether the due process clause bears upon conditions of confinement before ultimately holding that "as concerning as the COVID-19 pandemic is, resolving an appeal of an order of detention must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act." *United States v. Martin*, 2020 WL 1274857 at *2-3 (D. Md. Mar. 17, 2020).  The *Martin* court observed that the due process clause of the Constitution "may well be implicated" by the conditions of confinement, for instance, "if defendants awaiting trial can demonstrate that they are being subjected to conditions of confinement that would subject them to exposure to serious (potentially fatal, if the

detainee is elderly and with underlying medical complications) illness." *Martin*, 2020 WL 1274857 at *2 (citing *Bell*, 411 U.S. at 535); *see generally Youngberg v. Romeo*, 457 U.S. 307, 322 (1982) (explaining that because pre-trial detainees are presumed innocent, they are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish"). The *Martin* court distinguished further between application of the Due Process Clause for pretrial detainees and the Eighth Amendment for convicted detainees. *Martin*, 2020 WL 1274857 at *2 (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Loe v. Armistead*, 582 F.2d 1291, 1293–94 (4th Cir. 1978)).

It is undisputed that the proper avenue for relief for pre-trial detainees, such as Mr. Riggins, is the Fifth Amendment due process clause and the proper avenue for relief for post-conviction detainees is the Eighth Amendment. The D.C. Circuit in *Brogsdale* reiterated that the Eighth Amendment only applies to convicted prisoners serving sentences after conviction. *See Brogsdale,* 926 F.2d at 1188; *Helling v. McKinney*, 509 U.S. 25 (1993). The rights of pre-trial detainees are different than the rights of post-conviction detainees. "While a convicted prisoner is entitled to protection only against 'cruel and unusual' punishment [under the Eighth Amendment], a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 188 (D.D.C. 2009) (quoting *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992)). However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell,* 441 U.S. at 537. The Court therefore addresses Mr. Riggins's Eighth Amendment arguments in the context of his Fifth Amendment arguments.

## III. ANALYSIS

Mr. Riggins raises several arguments regarding his release.  First, he argues that the current COVID-19 pandemic, in general and as it applies to the D.C. Jail, tilt the factors listed in 18 U.S.C. § 3142(g) in favor of release.  Second, he contends that there are compelling reasons for him to be released temporarily under 18 U.S.C. § 3142(i).  Lastly, he argues that his continued detention will violate the Fifth Amendment.  The Court addresses each argument in turn.

A. The Bail Reform Act Factors

Mr. Riggins first argues that COVID-19 has impacted the balance of the factors listed in 18 U.S.C. § 3142(g) and that those factors now weigh in favor of release.  He focuses in particular on the third and fourth factors and argues that he is not a danger to the community because he is at a risk for serious illness from COVID-19.  As the Court must consider each factor, it will discuss each factor here.

*1. Nature and Circumstances of the Offense Charged*

The first factor under Section 3142(g) is "the nature and circumstances of the offense charged," including whether "the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  18 U.S.C. § 3142(g)(1).  The nature and circumstances surrounding the offense charged , as described above, are a cause for concern here.  The offense is directly related to possession of a firearm, a dangerous weapon that could cause harm not only to law enforcement officers but also to bystanders.  And, according to the Government's unrebutted retelling, Mr. Riggins fled from officers, retrieved the firearm from his belt, and would not drop the firearm when asked.  Gov't Opp'n at 3–4.  Testing also confirmed that Mr. Riggins was on PCP at the time of his arrest.  *Id.* at 6.  The crime charged is undeniably serious and the possession

of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community.  This first factor thus weighs in favor of detention.  *See United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (finding that first factor weighs in favor of detention in case involving firearm and drug possession).

    *2. Weight of the Evidence*

    The second factor is "the weight of the evidence against the person."  18 U.S.C. § 3142(g)(2).  As described and discussed above, the Government has established probable cause to believe that Mr. Riggins committed the charged offense.  According to the Government's unrebutted description of the event, Mr. Riggins was found with the firearm on his person.  Gov't Opp'n at 5.  Moreover, Mr. Riggins does not address this factor or point to any evidence that would impact this factor in the instant motion.  This factor therefore weighs in favor of detention as well.

    *3. History and Characteristics of the Defendant*

    The third factor requires the Court to consider "the history and characteristics of the person," which includes both "(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" as well as "(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."  18 U.S.C. § 3142(g)(3).

    Mr. Riggins argues that this factor is impacted by his asthma and status as a smoker, which he contends place him at a higher risk for becoming seriously ill with COVID-19.  *See* Def.'s Mot. at 9–10, 12; Def.'s Suppl. to Emergency Mot. for Release due to the COVID-19 Pandemic ("Def.'s

Suppl."), ECF No. 17, at 1–2.  The medical records submitted by Mr. Riggins indicate that Mr. Riggins had a medical history of mild intermittent asthma and was a daily smoker as of November 15, 2019.  Def.'s Suppl. Ex. 1, ECF No. 17-1, at 2.  He was taking an inhaler as needed at that time, *id.*, but had discontinued taking it at certain points in the past, *see, e.g.*, *id.* at 5 (March 13, 2019); *id.* at 8 (March 14, 2018); *id.* at 17 (June 13, 2014); *id.* at 20 (April 15, 2014).  The medical records do not indicate whether Mr. Riggins has any lung damage or disease as a result of his status as a long-term daily smoker.

Mr. Riggins cites to several sources to support that people with chronic medical conditions, including asthma, are at increased risk of becoming seriously ill if they contract COVID-19.  These sources draw from data and information shared by various studies, including those conducted by the Centers for Disease Control and Prevention ("CDC").  *See* Def.'s Mot. at 9–10.  The New York Times article he cites, which discusses a study of patients in China and interviews with medical doctors, explains that "[l]ongtime smokers with damaged lungs" will be "more vulnerable" and that "patients with chronic lung conditions like asthma" should avoid exposure to the virus and speak to their doctors.  Roni Caryn Rabin, *Coronavirus Threatens Americans With Underlying Conditions*, New York Times (Mar. 12, 2020), available at https://tinyurl.com/swh8b7n (last accessed April 27, 2020).  The Washington Post article cited by Mr. Riggins discusses a CDC study of persons requiring admission to an intensive-care unit in the United States and stated that, pursuant to the study, "[p]eople who smoke or have chronic lung conditions are especially vulnerable."  Joel Achenbach and William Wan, *New CDC data shows danger of coronavirus for those with diabetes, heart or lung disease, other chronic conditions*, Washington Post (Mar 31., 2020), available at https://tinyurl.com/rkoe6v4 (last accessed April 27, 2020).

These sources, while helpful, do not necessarily address persons like Mr. Riggins, who has

a history of mild to intermittent asthma and who has not shown that he has lung damage or disease as a result of being a smoker. The evidence submitted by the Government, which comes directly from the CDC, addresses this more directly. Mr. Riggins admits that "this situation is extremely fast moving" and that the "briefing is based on the best information available as of April 13, 2020." *Id.* at 2 n.1. As both parties' sources draw upon CDC information, the Court therefore refers to the most recent information made available by the CDC regarding the risk of severe illness from COVID-19 for those with asthma and smokers.

As for asthma, the CDC explains that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." Centers for Disease Control and Prevention, *Coronavirus Disease 2019—People with Asthma*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last accessed April 27, 2020); *see also* Centers for Disease Control and Prevention, *Coronavirus Disease 2019— People Who Are At Higher Risk* (listing "[p]eople with chronic lung disease or moderate to severe asthma" as vulnerable group), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed April 27, 2020); Centers for Disease Control and Prevention, *Coronavirus Disease 2019—Underlying Conditions* (listing "[p]eople with chronic lung disease or moderate to severe asthma" as those at "high-risk for severe illness from COVID-19"), available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (last accessed April 27, 2020); Centers for Disease Control and Prevention, *Coronavirus Disease 2019—At Risk for Severe Illness* ("Moderate-to-severe asthma may put people at higher risk for severe illness from COVID-19."), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed April 27, 2020).

The CDC has shared less information about the connection between the risk for severe illness and an individual's status as a long-term smoker.  It states that, in general, those with chronic lung diseases may be "at higher risk for severe illness from COVID-19."  Centers for Disease Control and Prevention, *Coronavirus Disease 2019—At Risk for Severe Illness*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed April 27, 2020).  However, Mr. Riggins cites to a Mayo Clinic article about the relevant risks for smokers, in which a Mayo Clinic pulmonologist and critical care medicine specialist states that smokers, particularly current smokers, "may be at increased risk of becoming very sick if they contract the virus."  Mayo Clinic, *What smokers should know about COVID-19*, available at https://newsnetwork.mayoclinic.org/discussion/what-smokers-should-know-about-covid-19/ (last accessed April 27, 2020).

At bottom, then, Mr. Riggins has a medical history of mild and intermittent asthma and a long history of smoking.  It is unclear whether he is experiencing asthma issues at this point in time, but the evidence submitted suggests that it is those with moderate to severe asthma who are most at risk of potentially becoming severely ill with COVID-19.  Mr. Riggins has not shown that he has moderate to severe asthma or even that he is experiencing asthma currently.  As for Mr. Riggins's status as a smoker, because he has not shown that he has any chronic lung disease or damage as a result of smoking (or that he is currently a smoker), he has not shown that his status puts him at a higher risk of severe illness of he contracts COVID-19.

The other portions of Mr. Riggins's history relevant to this factor must also be discussed.  As submitted by the Government, Mr. Riggins has several prior convictions in Maryland, Virginia, and Washington, D.C.:  Assault (Maryland, 2018); Fleeing Law Enforcement Officer (Virginia, 2018); Larceny (Virginia, 2014); Possession of a Controlled Substance—PCP (Virgina, 2012);

Arson (Virginia, 2011); Possession of a Controlled Dangerous Substance—Not Marijuana (Maryland, 2010); Possession of Unregistered Firearm/Unlawful Possession of a Firearm or Destructive Device, Unlawful Possession of Ammunition (Washington, D.C., 2008); Simple Assault (Washington, D.C., 2004); Possession of Marijuana—Misdemeanor (Washington, D.C., 2004); and Burglary—4th Degree (Maryland, 1998). Gov't Opp'n at 5. Moreover, the Government provides that Mr. Riggins was on supervised probation related to his 2018 assault conviction when charged with the current offense; the probation began on February 28, 2019 and is scheduled to end on February 28, 2022. *Id.* at 5–6. According to the Government, and unrebutted by Mr. Riggins, at the detention hearing Mr. Riggins's supervising officer reported that Mr. Riggins had been minimally compliant: he had been testing positive for PCP and it was unclear whether he was compliance with drug treatment. *Id.* at 6. Mr. Riggins also had a prior revocation in relation to that case, which had resulted in an additional term of imprisonment. *Id.*

Mr. Riggins also discusses the current circumstances at the D.C. Jail. Mr. Riggins confirmed during the April 22, 2020 Status Hearing that he was in the general population at the D.C. Jail. The Government argues in its opposition that the Department of Corrections has undertaken steps to try to prevent the spread of COVID-19 within the Jail. Gov't Opp'n at 10–11. It references another case in front of this Court, *Banks v. Booth*, No. 20-cv-849, in which those steps are being considered. As of April 19, 2020, the Court has issued a Temporary Restraining Order in that case, as the plaintiffs had shown a likelihood of success on the merits for their Fifth Amendment claims. *See Banks v. Booth*, No. 20-cv-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020). In that case, this Court found that "the infection rate in DOC facilities was over seven times the infection rate of the District of Columbia at large" and that plaintiffs had "provided evidence that they cannot take the same precautions as those who are detained." *Id.* at *6. Reports

from amici appointed by the Court confirmed that, although the Department of Corrections may have been attempting to implement procedures to address the spread of COVID-19 in their facilities, precautions such as social distancing had not been sufficiently implemented. *Id.* at 14–15. However, the Temporary Restraining Order in that case requires the Department of Corrections to step up its ongoing attempts to implement precautions aimed at stemming the spread of COVID-19 cases within their facilities. While the conditions discussed in *Banks* are concerning, so too are the other facets of Mr. Riggins's relevant history. The Court therefore finds that this factor does not clearly weigh against pretrial detention, and still weighs in favor of detention as, the record does not demonstrate a clear potential for him to be at a higher risk of severe illness if he contracts COVID-19.

### 4. Danger to the Community

The fourth factor requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The Government argues that this factor weighs in favor of detention. Mr. Riggins was charged with a crime involving a firearm. Indictment, ECF No. 1. And at the time of the charged offense, he was on probation in relation to the assault case discussed above, which was second-degree assault or domestic violence for assaulting his then-girlfriend. Gov't Opp'n at 5–6. When the proposal is that Mr. Riggins be released on home confinement, that he has a prior conviction for what amounts to domestic violence is especially concerning. *See* Def.'s Mot. at 2, 13–15.

Other evidence submitted by the Government demonstrates that he would pose a danger to the community if released and that no reasonable conditions could guarantee the safety of the community. He was in possession of a firearm despite being legally barred from such possession

in relation to that case.  Gov't Opp'n at 6.  What is more, Mr. Riggins had been testing positive for PCP and tested positive for PCP at the time of his arrest in this matter. *Id.* at 6.  Mr. Riggins in fact had a prior revocation of his probation in relation to that assault.  *Id.*  Taken together with his history discussed above, these facts suggest that Mr. Riggins, if released, would present a danger to the community.  Considering his history of non-compliance while under supervision, there is also reason to believe that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(e)(1), (f)(2).

This, however, does not consider the impact of COVID-19.  Mr. Riggins suggests that because he is at a higher risk for serious illness, he is unlikely to risk violating any conditions set, which would land him back in the D.C. Jail, where he is at a higher risk of contracting COVID-19 and consequently becoming severely ill.  Def.'s Mot. at 12.  Mr. Riggins also points out that his criminal history does not include, by and large, violent offenses; eight of his ten prior convictions were misdemeanors, and the majority happened more than five years ago.  *Id.*  And while firearms themselves might be dangerous, Mr. Riggins argues, the charged offense here was being a felon in possession of a firearm, which is not necessarily a crime of violence.  *Id.* at 13.

The Court agrees that the effect of COVID-19 lessens some of these concerns.  In particular, it heightens the consequences for Mr. Riggins of not abiding by any conditions that the Court might set for his release, and thus lessens the danger he might pose to the community.  But based on Mr. Riggins's history of seeming non-compliance with similar restrictions (such as probation or the bar on possessing a firearm) described above, and his most recent conviction for assault, the impact of COVID-19 is not sufficient to assure this Court that even the conditions set by HISP, such as location monitoring, are sufficient to assure the safety of the community.  This

is especially the case because it is unclear how long the stay-at-home orders will be in place in the region and there is no trial date set in this case.  Indeed, "[a] defendant who is unable to comply with conditions of release poses potential risk to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *United States v. Clark*, No. 19-40068-10-HLT, 2020 WL 1446895, at *7 (D. Kan. Mar. 25, 2020).  Accordingly, the Court finds that this factor still weighs slightly in favor of detention.

*     *     *

The Court now considers the balance of the four factors.  Mr. Riggins's Motion presents a close question.  The first two factors are unchanged by the current situation and still weigh in favor of detention.  The third factor, even taking into account Mr. Riggins's medical history and the current situation in the D.C. Jail, still weighs in favor of detention.  While COVID-19 slightly lessens the danger that would be posed to the community, the fourth factor still weighs in favor of detention.  And, as the Court notes above, the impact of COVID-19 at this point in time does not strongly suggest that Mr. Riggins will continuously abide by any conditions set by this Court.  In fact, his prior history of non-compliance with similar conditions suggests otherwise.  This is especially concerning in light of the fact that there is no trial date set in this case and it is unclear when stay-at-home and other distancing restrictions may end in the region.  And while location monitoring is helpful for determining a defendant's location, it does not indicate what a Defendant is doing, and thus does not completely address safety-related concerns.  *See United States v. Martin*, No. CR PWG-19-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020) (noting same).  The Government has therefore met its burden to show by clear and convincing evidence that "no

15

condition or combination of conditions will reasonably assure . . . the safety of any other person

and the community." 18 U.S.C. §§ 3142(e)(1), (f)(2).  The Court therefore denies Mr. Riggins's

Motion for Release on this basis.[3]  *See, e.g.*, *United States v. Justin McIntosh*, No. 1:19-CR-182,

2020 WL 1940868, at *2 (N.D. Ohio Apr. 22, 2020); *Martin*, No. CR PWG-19-140-13, 2020 WL

1274857, at *4.

B. Temporary Release Under 18 U.S.C. § 3142(i)

Mr. Riggins argues in the alternative that he should be temporarily released under

18 U.S.C. § 3142(i).  This section enables a judicial officer to "permit the temporary release of the

person, in the custody of a United States marshal or another appropriate person, to the extent that

the judicial officer determines such release to be necessary for preparation of the person's defense

or for another compelling reason."  18 U.S.C. § 3142(i).  In other words, under this statutory

provision, Mr. Riggins must show that (1) he would be released to "an appropriate person" and (2)

that his temporary release is "necessary for" a "compelling reason."[4]  *Id.*  "[C]ourts have granted

relief on [this] basis only sparingly, typically in order to permit a defendant's release where, for

example, he is suffering from a terminal illness or serious injuries."  *United States v. Thomas*, No.

17-cr-194 (RDM), 2020 WL 1911558, at *2 (D.D.C. Apr. 20, 2020) (internal quotation marks

omitted).  "[T]he defendant bears the burden of demonstrating that his temporary release is

warranted."  *Id.*  The Court considers both statutory elements.

First, Mr. Riggins suggests that he be released to home confinement with his wife.  Mr.

---

[3] The outcome in this case can be contrasted with other cases in which the defendant demonstrated that he had a medical condition that put him at a higher risk of severe illness from COVID-19. *See, e.g.*, *United States v. Gamble*, No. 19-cr-348 (CKK), Mem. Op. and Order (Apr. 13, 2020), ECF No. 59 (releasing defendant who demonstrated that he had hypertension, which put him at higher risk for serious illness from COVID-19).

[4] In his briefing, Mr. Riggins does not contend that release is necessary for preparation of his defense.  *See* Def.'s Mot. at 13 (referencing only compelling reason standard).

Riggins does not explain why his wife would quality as "another appropriate person," and while she has been deemed eligible to be a third-party custodian by Pretrial Services, it is not clear that she would be an "appropriate person" under the statute.  Nor does he suggest that her presence in his life has deterred him from criminal conduct.  *See United States v. Leake*, No. 19-CR-194 (KBJ), 2020 WL 1905150, at *4 (D.D.C. Apr. 17, 2020) (explaining that it was not clear that mother of defendant's child was not clearly appropriate person under section 3142(i)); *United States v. Armstead*, No. CR 18-00357 (APM), 2020 WL 1821130, at *1 (D.D.C. Apr. 10, 2020) (finding that defendant had not shown that mother would be appropriate person); *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020) (same).  *But see United States v. Stephens*, No. 15-cr-95, 2020 WL 1295155, at *7 (S.D.N.Y. Mar. 19, 2020) ("[C]ase law suggests that family members may constitute 'appropriate persons' where the defendant is released to relatives and placed under house arrest.").

Moreover, Mr. Riggins has not established compelling reasons for temporary release.  Mr. Riggins does not develop this argument separately in his briefing, so it appears that he contends the same reasons he provided with respect to section 3142(g) are those he intended to provide for section 3142(i), including the circumstances surrounding the spread of COVID-19 and his medical history.  *See* Def.'s Mot. at 13.  But as noted above, Mr. Riggins has not provided any evidence to show that he has moderate to severe asthma, and, in light of the evidence demonstrating that his asthma is intermittent, has not shown that he is experiencing difficulties related to asthma presently.  There is therefore little evidence in the current record to demonstrate that the asthma Mr. Riggins intermittently has puts him at a higher risk for getting severely ill if he contracts COVID-19.  The same is true of his status as a smoker; he has not shown that he has any lung disease or damage as a result of his status as a smoker (or shown that he is currently a smoker),

which, pursuant to the CDC guidance, would put him in a higher risk category.

Mr. Riggins also references conditions at the D.C. Jail. While the Court recognizes that the conditions at the D.C. Jail have previously not been an ideal response to the COVID-19 pandemic—indeed, as discussed above, this Court has thoroughly considered these conditions in a separate case, *see Banks v. Booth*, No. 20-cv-849, 2020 WL 1914896 (D.D.C. Apr. 19, 2020)— a Temporary Restraining Order requiring the D.C. Jail to implement sufficient precautions has been issued, *Banks v. Booth*, No. 20-cv-849, Order (Apr. 19, 2020), ECF No. 50. And, as the Court noted in that case, the Department of Corrections had already undertaken numerous measures in an attempt to stop the spread of COVID-19 within its facilities. *See Banks v. Booth*, No. 20-cv-849, 2020 WL 1914896, at *6–*11. In short, on the current record, there are insufficient "individualized reasons for why release would be necessary in [t]his particular case."[5] *Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6.

C. Fifth Amendment

Mr. Riggins also argues that the current conditions of confinement at the D.C. Jail "create an unreasonable risk of exposure to COVID-19," as there are insufficient "necessary supplies for personal and environmental hygiene necessary to protect against contraction of the virus." Def.'s Mot. at 16. As previously discussed, the Court has examined the conditions at Department of Corrections facilities in relation to another case, *Banks v. Booth*, No. 20-cv-849. Mr. Riggins

---

[5] The facts in Mr. Riggins's case can be contrasted with other cases in which defendants were temporarily released but had conditions that were more clearly linked to risk of severe illness from COVID-19. *See, e.g.*, *United States v. Dhavale*, No. 19-MJ-00092, 2020 WL 1935544, at *6 (D.D.C. Apr. 21, 2020) (affirming magistrate judge's order to temporarily release defendant where defendant suffered from prediabetes and hypertension); *United States v. Thomas*, No. 17-CR-194 (RDM), 2020 WL 1911558, at *8 (D.D.C. Apr. 20, 2020) (releasing defendant temporarily under section 3142(i) due to COVID-19, conditions at jail, and defendant's severe lung disease, sarcoidosis).

explicitly references that case in his Supplement in this context. Def.'s Suppl. At 2–3. In that case, the Court has found that the plaintiffs had shown a likelihood of success on the merits with respect to their Fifth Amendment claims and issued a TRO. *See Banks v. Booth*, No. 20-cv-849, 2020 WL 1914896. That TRO was issued after Mr. Riggins submitted the instant Motion, but before he submitted his Supplement.

In light of the TRO and its consequences, Mr. Riggins here does not provide sufficient evidence with respect his Fifth Amendment claim. Indeed, Mr. Riggins provides little to no individualized evidence regarding the current conditions at the D.C. Jail. And under the TRO, the Department of Corrections has been ordered to implement or strengthen certain precautions. This includes provisions related to medical surveillance and monitoring, cell restrictions, consulting with public health officials, staff training, social distancing policies, personal protective equipment, and cleaning of facilities, among other things. *Banks v. Booth*, No. 20-cv-849, Order (Apr. 19, 2020), ECF No. 50. Based on this and any actions the Department of Corrections may have taken since the TRO was issued on April 19, 2020, the claims put forth by Mr. Riggins (which are from April 13, 2020) are insufficient. However, the Court recognizes that the record and circumstances may change and denies his Motion on this basis without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Riggins's Emergency Motion for Release Due to the COVID-19 Pandemic, ECF No. 12. In denying Mr. Riggins's Motion, the Court's does not intend to make light of the serious health threats that COVID-19 poses. The pandemic, and its effects on our society, are unprecedented. But the generalized risks posed by COVID-19 must be considered in the context of the statutory scheme for pretrial detention that Congress has prescribed. On the present record, the Court is not convinced that, the risk of

contracting COVID-19 sufficiently changes the balance of the factors under 18 U.S.C. § 3142(g)

or presents a compelling reason for temporary release under 18 U.S.C. § 3142(i).  Nor is the Court

convinced, in light of superseding circumstances such as the TRO in *Banks* and the lack of

evidence put forth by Mr. Riggins, that his continued detention constitutes a Fifth Amendment

violation at this time.  However, the Court is mindful that the record and circumstances may change

and therefore denies Mr. Riggins's Motion without prejudice.


Date:   April 27, 2020                              _____/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge